CLERKS OFFICE U.S. DIST. COURT
LYNCHBURG, VA
FILED
March 02, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ B. McAbee
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| PETER BRAKE,<br><br>         *Plaintiff,*<br><br>v.<br><br>LIBERTY UNIVERSITY, INC.; DONDI COSTIN; ASHLEY REICH; STEVE FOSTER; AND STEVE FERRO,<br><br>         *Defendants.* | CASE NO. 6:25-CV-00017<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Liberty University ("Liberty"), Dondi Costin, Ashley Reich, Steve Foster, and Steve Ferro (collectively "Defendants") move for summary judgment in this Title IX and Uniformed Services Reemployment Rights Act ("USERRA") case. Dkt. 68. Defendants ask the Court to grant summary judgment on: (i) a retaliation claim under Title IX of the Education Amendments of 1972 ("Title IX"), in violation of 21 U.S.C. § 1681 *et seq.*; (ii) a discrimination claim under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), in violation of 38 U.S.C. § 4311(a); (iii) a retaliation claim under USERRA, in violation of § 4311(b); (iv) a violation of the Virginia Whistleblower Protection Act ("VWPA"), Va. Code § 40.1-27-3; (v) a discrimination claim under the Virginia Human Rights Act ("VHRA"), Va. Code §§ 2.2-3905(B)(1)(a)-(b); and (vi) a retaliation claim under VHRA, Va. Code §§ 2.2-3905(B)(7)(i). Dkt. 49. The Court will grant the motion in part and deny in part.

## BACKGROUND[1]

In 2019, Brake began working as a Title IX investigator in Liberty's Office of Equity & Compliance ("OEC"). Dkt. 69-1 ("Brake Depo") at 52:14-18. In this role, he investigated potential violations of Title IX and other Liberty policies. *Id.* at 56:13-21. Brake took military leave from January 2020 to September 30, 2023. *Id.* at 57:14-22. While on leave, Brake received text messages from Title IX investigator Erika Woolfolk. Dkt 69-2 at 1 (Brake 1, PLTF_000299). Woolfolk told Brake that Reich, the Senior Vice President of Equity and Compliance, had made inquiries about his qualifications and asking if he "intimidated" people within OEC. Brake Depo at 129:8-130:13. Woolfolk also shared that others referred to him as a "squatter" and the "Brake problem." *Id.* at 335:2-8.

After he returned from leave, Liberty reemployed Brake as a Title IX investigator. Brake Depo at 73:6-10. Brake's direct report was Nathan Friesema; Friesema, in turn, reported to Reich. *Id.* at 63:11-13; 65:10-11, 19-22; 66:1-3. Upon his return, Brake found his office in disarray; fingernail clippings and garbage littered the desk, and he had no office chair. *Id.* at 130:13-131:17. During his first week, Brake spoke with Reich who made comments that she, as a former military spouse, did not value military service. *Id.* at 133:8-17. Reich refused to discuss Brake's salary and refused to restore a cell phone subsidy that he previously received. *Id.* at 167:1-20. Brake had to contact the Human Resources Department (HR) to restore this benefit. *Id.* at 171:13-22.

Upon his return, Brake saw Friesema prejudge Title IX cases, advise witnesses before complaints were filed, and lead witnesses in interviews. Brake Depo at 89:3-13, 96:8-97:6, 97:18-98:12. Brake believed this conduct violated Title IX. *Id.* After raising these concerns unsuccessfully to Friesema and Reich, Brake drafted a letter to Liberty president, Dondi Costin,

---

[1] These facts are largely undisputed by the parties. For facts that are in dispute, as is required by the summary judgment standard, they are construed in the light most favorable to Brake.

2

about both the suspected Title IX violations and concerns that OEC lacked Christian leadership. Brake Depo at 99:22-100:20, 112:21-113:14. At a Veteran's Day reception on November 11, 2023, he handed this letter to Costin. *Id.* at 110:13-112:20, Dkt. 69-2 at 11-12 (Brake 6). Costin provided the letter to Reich after the event. Dkt. 75-9 ("Costin Depo") at 20:21-21:24.

On November 17, 2023, Brake met with Reich and Friesema to discuss the letter. Brake Depo. at 142:9-12, 145:18-146:3; Dkt. 69-2 at 9-10 (Brake 5). Following this meeting, Brake felt his job was in jeopardy and felt that Reich wanted him to recant his letter. *Id.* at 155:4-21. Over the next few months, Reich received complaints that Brake was "sharing case information with other investigators;" "not following through on certain aspects of cases;" and not "updat[ing] case notes within [the] system" in a "timely" fashion. Dkt. 69-3 ("Reich Depo") at 98:14-99:13. Because of this, in March 2024, she alerted Ferro and Friesema that OEC was "beginning to initiate disciplinary action" against Brake. Dkt. 69-4 at 1.[2] However, Brake never received any discipline; and indeed, his only performance evaluation in 2024 was positive. Brake Depo at 71:15-72:6.

On April 22, 2024, Brake met with Reich to discuss further issues with Friesema's conduct. Brake Depo at 196:1-197:4. Ferro began an HR investigation into Brake soon after this report. *Id.* at 198:12-20. During this investigation, Ferro filmed Brake and questioned him extensively about a comment he allegedly made saying Friesema was in the "hot seat;" Brake does not remember making that comment. *Id.* at 208:21-209:7, 213:18-214:15.

---

[2] Reich "had not been involved in" the meetings where Brake inappropriately shared case information, and when asked if her knowledge of these events was "based solely on [her] discussions with Mr. Friesema," Reich answered "[y]es I believe that's accurate." Reich Depo at 103:9-18.

On May 6, 2024, Liz Ingram,[3] with Brake's assistance, emailed allegations of sexual harassment against Friesema to Reich.[4] Brake Depo at 230:8-19; 233:20-234:11. These allegations included Friesema joking about sexual assault; discussing a personal business called "Butt Stuff BBQ;" and telling stories about visits to a strip club. Dkt. 69-2 at 22-23 (Brake 10). Liberty initiated an internal investigation, led by Todd Leeson from Gentry Locke, and placed Friesema on administrative leave. *Id.* at 220:22-221:19; 225:20-226:22. Brake was a witness in the investigation. *Id.* at 243:16-247:16. When the investigation concluded, Liberty terminated Friesema; Diane Padilla served as his replacement. Dkt. 69-8 ("Padilla Depo") at 18:13-21.

Brake filed a complaint about his concerns with the United States Department of Education, Office of Civil Rights ("OCR") on May 15. Brake Depo. at 297:2-6. On May 30, he filed a complaint with Padilla about Reich violating Title IX and USERRA. Brake Depo at 215:3-11. Less than a month later, on June 26, Reich and Foster terminated Brake's employment for "compliance issues." Reich Depo at 175:17-19. Liberty also terminated two other investigators, Woolfolk and Ingram, who complained about OEC's Title IX violations. Dkt. 75 at 11.

## **LEGAL STANDARD**

Summary judgment is appropriate where a case has "no genuine dispute as to any material fact" and if "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, a fact is material "if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). A dispute is "genuine if a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.*

---

[3]     Throughout the record, Liz Ingram is also referred to as Liz Hallgren. According to Brake's testimony, this is the "same person, different last name." Brake Depo. at 82:30-22.

[4]     These allegations had been raised to her by a third party whose name remained confidential during the depositions. Reich Depo at 141:2-12.

4

Any party can move for summary judgment following the conclusion of discovery; yet the moving party bears the burden and must establish that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on allegations in the pleadings; rather, it must present sufficient evidence so that a reasonable fact finder could find disputed facts in their favor. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). At summary judgment, the district court evaluates claims using a preponderance of the evidence standard. *Sylvia Dev. Corp.*, 48 F.3d at 818. The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

## ARGUMENT

### A.  A Reasonable Jury Could Find Defendants Retaliated Against Brake for Reporting Title IX Violations to Costin, Reich, and Ferro

Defendants argue the Court should grant summary judgment as to Count I for three reasons: (i) Brake did not engage in protected activity, (ii) Brake did not demonstrate a causal connection between protected activity and his removal, and (iii) Brake did not rebut Defendants' neutral reasons for removing him. Dkt. 69 at 14-18. Brake disagrees as to all three arguments. Dkt. 75 at 12-17.

#### 1. *A Reasonable Jury Could Find Brake Engaged in Protected Activity*

Title IX prohibits a federally funded institution from "retaliat[ing] against a person because [they] complain of sex discrimination" or engage in other "protected activity." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005); *Feminist Majority Found. v. Hurley*, 911 F.3d

5

674, 694 (4th Cir. 2018). To survive summary judgment on a Title IX retaliation claim, plaintiffs must establish (1) they "engaged in protected activity;" and (2) because of this, they "suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found.*, 911 F.3d at 694.

"Protected activity" includes "actions taken to oppose sex discrimination, such as reporting sexual harassment or filing a lawsuit against an employer for contravention of Title IX" as well as "oppositional conduct that is prompted by a reasonable belief that [a school] is not in compliance with its Title IX obligations." *Kessinger v. W. Virginia State Univ.*, 2026 WL 324485, at *10 (S.D. W.Va. Feb. 6, 2026) (citing *Jackson¸* 544 U.S. at 180); *Lamb v. Liberty Univ.*, 2022 WL 731526, at *3 (W.D. Va. Mar. 10, 2022). Courts are to take "an expansive view of what constitutes oppositional conduct" as "the threshold for oppositional conduct is not onerous." *Demasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Oppositional conduct, however, must be grounded in a "reasonable belief that an employer is not in compliance with its Title IX obligations" and must be presented in such a way that an employer understood, or should have understood it as opposing conduct prohibited by law. *Lamb*, 2022 WL731526, at *3.

Brake states he engaged in the following protected activity:

(1) submitting his letter to Costin on November 15, [2023];
(2) meeting with Reich on or about April 22, 2024;
(3) speaking with Ferro in Human Resources on May 1, 2024;
(4) assisting Liz Ingram (née Hallgren) in sending an email to Ashley Reich on or about May 6, 2024;
(5) participating in the workplace investigation conducted by Todd Leeson;
(6) filing a complaint with OCR on or about May 15, 2024; and
(7) filing a complaint with Padilla against Reich on or about May 30, 2024.

Dkt. 69 at 16.

Defendants argue Brake's complaints to Costin, Reich, and Ferro merely demonstrated "disagreement with investigative decisions," and fail to meet the standard for protected activity.

6

Dkt. 69 at 16-17. The Court disagrees. Brake raised concerns that Friesema had "already investigated part of [a] matter . . . and prejudged the case." Dkt. 69-2 at 11-12 (Brake 6). Thus, Brake did not merely "disagree[] with investigative decisions," but rather, stated Friesema's conduct violated Title IX. Dkt. 69 at 16-17; 34 C.F.R. § 106.45(b)(2). A reasonable jury could find these complaints to be protected activity.

Defendants next argue that Brake's status as a mandatory reporter means his involvement in Leeson's investigation, both as complainant and witness, is not protected activity. Dkt. 69 at 16-17. However, Brake's mandatory reporter status does not automatically lead to this conclusion; it is an open question of law "whether merely reporting sexual harassment of another employee as required by one's job duty is protected opposition activity under Title VII." *See Boyd v. K-VA-T Food Stores, Inc.*, 2021 WL 2720102, at *n. 5 (W.D. Va. July 1, 2021). A reasonable jury could conclude Brake's involvement in the Leeson investigation is protected activity.

Finally, a reasonable jury could conclude Brake's formal reports—to both OCR and to OEC—are protected activity under Title IX as "[r]eporting incidents of discrimination is integral to Title IX enforcement." *Jackson*, 544 U.S. at 180.

2. *A Reasonable Jury Could Find Some of Brake's Protected Activities Sufficient to Establish Causation*

As stated above, a plaintiff must establish "as a result of their protected activity—they suffered an adverse action attributable to the defendant educational institution." *Feminist Majority Found.*, 911 F.3d at 694.[5] To satisfy this element, a plaintiff's protected activity must be a "motivating factor" in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (contrasting the "detailed statutory scheme" of Title VII that requires but for causation

---

[5] Brake's termination from his position is adverse action under Title IX precedent, and neither party has disputed this.

with "Title IX.").[6] And an employer's "actual knowledge [of a plaintiff's protected activity] is required to establish a Title [IX] claim." *Roberts v. Glenn Indus. Grp. Inc.*, 998 F.3d 111, 125-26 (4th Cir. 2021).

    i.    *A Reasonable Jury Could Find Brake's Internal Reports and Participation in Leeson's Investigation Satisfy Causation*

During Brake's termination, Reich told him he was being fired for "compliance issues." Reich Depo at 175:17-19. Reich received complaints "more than once" about Brake "sharing case information with other investigators;" "not following through on certain aspects of cases;" and not "updat[ing] case notes within [the] system" in a "timely" fashion and had "initiate[d] disciplinary action" because of these concerns. *Id.* at 98:14-99:13; Dkt. 69-4 at 1.

Despite these performance concerns, a reasonable jury could find Brake's reports were a "motivating factor" in his termination. *Nassar*, 570 U.S. at 360. First, Brake already reported Title IX violations before these concerns arose. Dkt. 69-2 at 11-12 (Brake 6). Second, Brake's only performance review in "spring of 2024" was "positive." Brake Depo at 71:11-72:6. Third, Reich "had not been involved in" meetings where Brake inappropriately shared case information; she based her concerns "solely on discussions with Mr. Friesema." Reich Depo at 103:9-18.

    ii.    *A Reasonable Jury Could Not Find Brake's Formal Reports to OCR and OEC Satisfy Causation*

Brake argues his formal reports to OCR and OEC meet the burden for causation as "he submitted his own complaint of discrimination against Reich and was terminated less than one month later." Dkt. 75 at 17. Not so. A reasonable jury could not conclude these reports were "a motivating factor" in his termination as the record indicates Reich "had not been made aware" of

---

[6] `= Defendants assert "Brake fails to show that any alleged protected activity under Title IX was the but-for cause of his termination." Dkt. 69 at 18. This argument misstates Title IX's burden; Brake need only establish his reports were a "motivating factor" in his termination.

them until the lawsuit was filed. Reich Depo at 165:7-10.[7] The Court will grant summary judgment as the Title IX retaliation claim for Brake's May 15 and 30 formal reports.

### 3. *A Reasonable Jury Could Find Defendants' Justifications for Brake's Termination are Pretext*

Once a plaintiff has established a prima facie case of retaliation, a defendant must articulate a "legitimate, non-retaliatory reason" for the adverse action. *Lashley v. Spartanburg Methodist College*, 66 F.4th 168, 176 (4th Cir. 2023). The burden then shifts back to the plaintiff to establish those reasons are pretextual. *Id.* To show pretext, a plaintiff must show "either that the defendant's explanation [for the adverse action] is not credible, or that the [defendant's] decision was more likely the result of retaliation." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016).

Although terminated Brake for "compliance issues," Reich's concerns about Brake's performance arose after he reported Title IX violations. Reich Depo at 103:9-18; 175:17-19. Reich's concerns are also based largely on Friesema's complaints about Brake. Therefore, a reasonable jury could conclude they are "more likely the result of retaliation," and thus, are pretext. *Sharif*, 841 F.3d at 203. The Court will deny summary judgment as to the remainder of Count I.

### B. A Reasonable Jury Could Not Impose USERRA Liability on Costin and Ferro

Defendants argue a reasonable jury could not find Costin and Ferro liable on Counts II and III because they fall outside of USERRA's definition of "employer." Dkt. 69 at 18. The Court agrees.

USERRA limits liability to employers and defines an "employer" as "any person . . . that pays salary or wages for work performed or that has control over employment opportunities." 38

---

[7] Padilla corroborated this statement in an email to Brake, saying "I want to let you know that I was careful not to make [Reich] aware of the complaint you made against her . . . I just wanted to confirm for you that I did not share the fact that you have raised concerns about her, and she was not aware of those concerns when she met with you today." Dkt. 69-2 at 49 (Brake 20, PLTF_000262).

U.S.C. § 4303(4)(A). Nothing in the record indicates Costin and Ferro either paid Brake's salary or participated in the decision to remove him. Indeed, when asked if he had any "input or involvement in the decision to terminate Mr. Brake's employment," Costin responded "no." Costin Depo at 15:13-16. Likewise, when asked "[w]hat role if any did you have in terminating Mr. Brake's employment?" Ferro responded, "I was aware, but I was not a decision-maker, so I did not have a role." Dkt. 69-6 ("Ferro Depo") at 139:18-21. As such, a reasonable jury could not find either party liable for Counts II and III; the Court will grant summary judgment on these counts as to these Defendants.

### C. Brake's USERRA Claims, In Part, Survive Summary Judgment

#### 1. *A Reasonable Jury Could Find Defendants Denied Brake of a Benefit Upon Reemployment*

Under USERRA, "a person who is . . . in a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). "Benefit of employment" is defined as "any advantage, profit, privilege, gain, status, account, or interest . . . that accrues to the employee." 20 C.F.R. § 1002.5. And because USERRA "was enacted to protect . . . members of the uniformed services, it must be broadly construed in favor of its military beneficiaries." *Hill v. Michelin N. Am.*, 252 F.3d 307, 312-13 (4th Cir. 2001).

When Brake returned to Liberty, "Reich . . . informed [him] that she cut . . . a cellphone" "subsid[y]" he previously received. Brake Depo at 167:4-170:20. Brake reported this issue HR who "restored" it. *Id.* at 171:13-22. However, the record does not indicate when Liberty restored this benefit, if there was any gap in coverage, and if that gap was remedied. If there was a gap, a reasonable jury could find Defendants denied Brake's cellphone subsidy, which is a "benefit of employment." 20 C.F.R. § 1002.5. The Court will deny summary judgment as to this claim.

#### 2. *A Reasonable Jury Could Find Defendants Unfairly Discharged Brake*

10

USERRA further requires that "a person who is reemployed . . . shall not be discharged from such employment, except for cause." 38 U.S.C. § 4316(c). Cause is defined as "conduct" and the employer "bears the burden of proving that it is reasonable to discharge the employee for the conduct in question, and that he or she had notice, which was express or can be fairly implied, that the conduct would constitute cause for discharge." 20 C.F.R. § 1002.248(a). "Because employers have the burden of proving that the discharge was reasonable, it is difficult for employers to achieve summary judgment on claims under § 4316(c)." *Francis v. Booz, Allen & Hamilton*, 452 F.3d 299, 308 (4th Cir. 2006).

Defendants argue "Brake does not identify evidence showing that the stated reasons for his termination were unreasonable, pretextual, or disconnected from legitimate conduct or performance" and also "does . . . not point to evidence that he lacked actual or implied notice that the conduct at issue could lead to termination." Dkt. 69 at 21. This statement is incorrect. The record demonstrates Brake "performed [his] job to standard . . . was given good performance evaluations . . . [and] was never told otherwise." Brake Depo at 284:16-21. As such, a reasonable jury could find Defendants failed to give Brake sufficient notice, and the Court will deny summary judgment as to this claim.

### 3. *A Reasonable Jury Could Not Find Defendants Retaliated Against Brake Based on His Report of Reich's USERRA Violations*

Finally, USERRA establishes that "an employer may not . . . take . . . retaliatory action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, [or] (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter." 38 U.S.C. § 4311(b). A plaintiff must demonstrate their "obligation for service . . . is a motivating factor in the employer's [retaliatory] action." *Id.* § (c)(1).

11

Brake raised Reich's USERRA violations to Padilla on May 30. 2023. (Brake 16, PLF_00254-55). This report is protected under USERRA. Less than a month later, on June 26, 2024, Reich terminated him. Dkt. 69-2 at 43 (Brake 18, PLF_00253). However, because the record indicates Reich knew nothing about his USERRA discrimination report, a reasonable jury could not find his report was a "motivating factor" in his termination. Reich Depo at 165:7-10. The Court will grant summary judgment as Count III.

### D. A Reasonable Jury Could Find Defendants Liable on Brake's VWPA Claim

The VWPA establishes "an employer shall not discharge . . . an employee . . . because the employee . . . reports a violation of *any federal or state law or regulation* to a supervisor." Va. Code § 40.1-27.3 (emphasis added). To establish retaliation, the plaintiff must show: "(1) they engaged in protected activity; (2) the plaintiff's employer took an adverse employment action against the plaintiff; and, (3) a causal link between the two events existed." *See Wood v. Bristol Va. Util. Auth.*, 661 F. Supp. 3d 538, 550 (W.D. Va. 2023). A plaintiff's report must be the "but for" cause of the adverse employment action. *Workman v. LHC Grp. Inc.*, 2024 WL 3572305, at *3 (W.D. Va. July 29, 2024).

Brake has established he engaged in protected activity through his multiple reports regarding both Title IX and USERRA violations and has established he faced adverse action by being terminated. *See supra* A.1. And further, because Reich did not raise Brake's performance concerns until he had already complained of Title IX violations in the OEC office, a reasonable jury could conclude that his complaints were the but-for cause of his termination. *See supra* A.2. The Court will deny summary judgment as to Count IV.

### E. Virginia Human Right Act ("VHRA") Claims

*1. A Reasonable Jury Could Not Find Brake was Unlawfully Discharged Under the VHRA*

12

The VHRA prevents employers from "discharg[ing] [employees] because of . . . military status." Va. Code § 2.2-3905(B)(1)(a)-(b). To establish unlawful discharge, a plaintiff must demonstrate (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from those outside of the protected class. *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022). Whether or not a plaintiff's job performance is satisfactory depends on the "perception of the decision maker . . . not the self-assessment of plaintiff." *Evans v. Tech. Apps. & Serv. Co.,* 80 F.3d 954, 960-61 (4th Cir.1996).

Brake is a member of a protected class as a veteran. However, Reich's "perception" of Brake's work was negative—he "shar[ed] case information with other investigators;" did "not follow[] through on certain aspects of cases;" and did not "update case notes within [the] system" in a "timely" fashion. Reich Depo at 98:14-99:13; Dkt. 69-4 at 1. However, Brake also received a "positive" performance review during this time. Brake Depo at 71:11-72:6. Thus, conflicting information in the record exists regarding the Defendants' perception of Brake's performance. And a reasonable jury could find he established this element.

As Reich terminated Brake, and did not terminate other non-veteran investigation in the OEC office, a reasonable jury could also find he has established the third and fourth elements of this VHRA claim. The Court will deny summary judgment as to Count V.

2. *A Reasonable Jury Could Find Defendants Retaliated Against Brake Under the VHRA*

Under the VHRA, to establish a retaliation claim, a plaintiff must demonstrate (i) protected activity; (ii) adverse action; and (iii) causation between the protected activity and adverse action. *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 398 (W.D. Va. 2023). As analyzed above with the Title IX retaliation claim and the VWPA claim,

13

a reasonable jury could conclude Brake has established these elements. *See supra* A.1-3. The Court will deny summary judgment as to Count VI.

## CONCLUSION

The Court will deny summary judgment as to Count I for Brake's first five protected activities; will deny as to Count II for Reich, Foster, and Liberty; will deny as to Count IV-VI. The Court will grant summary judgment as to Count I for Brake's sixth and seventh protected activities; will grant as to Count II for Costin and Ferro; and will grant as to Count III.

A separate order will issue.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

Entered this 2nd of March, 2026.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE