CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

April 23, 2026

LAURA A. AUSTIN, CLERK
BY:  s/ CARMEN AMOS
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

|  |  |
|---|---|
| PETER BRAKE, | CASE NO. 6:25-CV-00017 |
| *Plaintiff,* | |
| v. | **MEMORANDUM OPINION** |
| LIBERTY UNIVERSITY, ET AL., | |
| *Defendants.* | JUDGE NORMAN K. MOON |

In this Title IX and Uniformed Services Employment and Reemployment Rights Act ("USERRA") case, Defendants Liberty University ("Liberty"), Ashley Reich ("Reich"), and Steve Foster ("Foster") (collectively, "Defendants") move the Court, under Federal Rule of Civil Procedure 54, to reconsider its denial of summary judgment as to Brake's Virginia Human Rights Act ("VHRA") claims for discrimination (Count V) and retaliation (Count VI). Dkt. 84. Brake opposes the motion. Dkt. 92. The Court will deny Defendants' motion as to Count V, but will grant the motion, in part, as to Count VI.

## FACTS

Peter Brake brought this suit against Defendants following his June 2024 termination from Liberty University's Office of Equity & Compliance ("OEC"). Dkt. 49. Brake worked for OEC in 2019, took military leave from 2020 to 2023, and returned to his role in fall 2023. Dkt. 69-1 ("Brake Depo") at 52:14-18, 57:14-22, 73:6-10. Brake testified to being mistreated upon his return, including finding his desk in disarray; having one of his supervisors, Ashley Reich, tell him she did not value military service; and not having his cellphone subsidy immediately restored. *Id.* at 130:13-131:17; 133:8-17; 167:1-20; 171:13-22.

Brake participated in at least seven protected activities during his reemployment with Liberty. Unhappy with OEC's lack of Christian leadership and believing his immediate supervisor (Nathan Friesema) violated Title IX by prejudging cases, Brake drafted and presented a letter to Liberty president Dondi Costin on November 11, 2023; met with Ashely Reich on November 17, 2023 and April 22, 2024; and participated in an HR investigation about his concerns. Brake Depo at 99:22-100:20; 110:13-112:20; 112:21-113:14; 142:9-12, 145:18-146:3; 198:12-20.[1]

In early May 2024, Brake assisted an OEC co-worker, Liz Ingram,[2] with a Title IX complaint of sexual harassment against Friesema and participated as a witness in the internal investigation, led by Gentry Locke, stemming from these allegations. *Id.* at 230:8-19; 233:20-234:11. As a result of the investigation, Liberty placed Friesema on administrative leave (later firing him) and replaced him with Diane Padilla. Dkt. 69-8 ("Padilla Depo") at 18:13-21.

Additionally, on May 15, 2024, Brake filed a complaint with the Department of Education, Office of Civil Rights ("OCR"), about OEC's Title IX violations, and, on May 30, 2024, filed a complaint with Diane Padilla, stating Ashley Reich violated Title IX and discriminated against Brake because of his veteran status. Brake Depo. at 215:3-11; 297:2-6. Less than a month after his report to Padilla, on June 26, 2024, Reich and Foster terminated Brake's employment for "compliance issues." Dkt. 69-3 ("Reich Depo") at 175:17-19. Liberty also terminated two non-veteran investigators, Woolfolk and Ingram, who complained about OEC's Title IX violations. Dkt. 75 at 11.

---

[1]    Ashely Reich began documenting performance concerns about Brake during this time period; specifically, that Brake would "shar[e] case information with other investigators;" "not follow[] through on certain aspects of cases;" and not "update[e] case notes" in a timely fashion. Dkt. 69-3 ("Reich Depo") at 98:14-99:13.

[2]    Liz Ingram is also referred to as Liz Hallgren throughout the record.

Defendants moved for summary judgment on all counts of Brake's complaint. Dkt. 68. The Court granted summary judgment as to Brake's Title IX claim for his reports to OCR and Padilla; as to Brake's USERRA claims as they pertained to Dondi Costin and Steve Ferro ("Ferro"); and as to Brake's USERRA retaliation claim. Dkt. 80. The Court denied summary judgment as to all other counts, including Brake's discrimination and retaliation claims under the Virginia Human Rights Act ("VHRA") (Counts V and VI). *Id.* Defendants now seek reconsideration of the denial of Counts V and VI. Dkt. 84.

## LEGAL STANDARD

The denial or partial grant of summary judgment is an interlocutory order, and the decision to revisit such an order is committed to the Court's discretion as part of its inherent authority. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); Fed. R. Civ. Pro. 54(b). Courts consider Rule 54(b) motion for reconsideration if there has been "(1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice." *Wooten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). Reconsideration is meant to be used "sparingly" as it is an "extraordinary remedy." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021).

## ANALYSIS

Defendants move the Court to reconsider its denial of summary judgment on Counts V and VI. Dkt. 84. For Count V, Defendants argue the Court's mistaken inclusion of the fact that Reich did not terminate other non-veteran investigators constitutes a clear error requiring reconsideration. *Id.* at 2-3. For Court VI, Defendants argue the Court failed to consider its own factual finding—that no record evidence existed demonstrating Reich knew about Brake's

3

complaint to Padilla—when analyzing Count VI constitutes a second clear error requiring reconsideration. *Id.* at 3.[3] The Court will consider each of these arguments in turn.

### A. VHRA Discrimination Claim

To prevail on a VHRA discrimination claim at summary judgment, a plaintiff must first establish a *prima facie* case of discrimination: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from those outside of the protected class." Va. Code § 2.2-3905(B)(1)(a)-(b); *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022).[4] To establish element four, veteran plaintiffs are "not required as a matter of law to point to a similarly situated [non-veteran] comparator in order to succeed." *See Bryant v. Aiken Regional Med. Cntr.*, 333 F.3d 536, 545 (4th Cir. 2003). Indeed, as a plaintiff's burden of establishing a *prima facie* case of discrimination is not meant to be "onerous," "[c]ircumstances that raise a reasonable inference of unlawful discrimination" may be used to establish this element. *See Bing v. Brivo Sys.*, 959 F.3d 605, 616 n.8 (4th Cir. 2020); *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Defendants argue that "Brake would need to identify comparators outside his protected class" that "were treated more favorably" "to establish this *prima facie* case," and since Brake failed to raise comparator evidence, the Court erred in denying summary judgment. Dkt. 85 at 5

---

[3]     Although Brake dismisses Defendants' arguments as "a second bite at the proverbial apple," the Court disagrees with this characterization. Dkt. 92 at 1-2. Defendants' arguments stem solely from the Court's previous opinion and do not seek to relitigate previous arguments.

[4]     Because Title VII and the VHRA use "substantially identical language," courts often consider these claims together. *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 394 n.4 (W.D. Va. 2023); *see also* Va. Code § 2.2-3902 ("Conduct that violates any Virginia or federal statute or regulation governing discrimination . . . is an unlawful discriminatory practice under this chapter."). Because of this symbiotic relationship, the Court will rely on Title VII precedent in analyzing Defendants' motion for reconsideration.

n.5.[5] Defendants' argument rests on a plainly incorrect statement of the law. To the contrary, Brake need not rely on comparator evidence at all to establish a *prima facie* case of discrimination; he may instead rely on "[c]ircumstances that raise a reasonable inference of unlawful discrimination." *See Bing*, 959 F.3d at 616 n.8. Brake has done so.

In his deposition, Brake testified that, while on military leave, he received text messages from fellow Title IX investigator Erika Woolfolk. Dkt 69-2 at 1 (Brake 1, PLTF_000299). These text messages detailed interactions with Reich where she made inquiries about his qualifications and whether he "intimidated" people. Brake Depo at 129:8-130:13. These texts also detailed interactions where Brake was referred to as a "squatter" and "the Brake problem." *Id.* at 335:2-8. Upon his return, Brake testified to hearing Reich comment she did not value military service. *Id.* at 133:8-17. Because a reasonable jury looking at these circumstances could infer unlawful discrimination based on military status, Brake has established a *prima facie* case of discrimination.

The Court must then turn to the burden-shifting framework of *McDonnell-Douglas*. 411 U.S. 793, 807 (1973). Under this framework, once Brake established a *prima facie* case of discrimination, Defendants must offer "reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *See Anderson v. Diamondback Inv. Grp. LLC*, 117 F.4th 165, 177 (4th Cir. 2024) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). Defendants assert that Brake was removed for "compliance issues" stemming from concerns about his work performance, namely, that he would "shar[e] case information with other investigators;" "not follow[] through on certain aspects

---

[5] The Court acknowledges the statement in its previous opinion that "Reich . . . did not terminate other non-veteran" investigators is incorrect. Dkt. 79 at 13. However, the inclusion of this incorrect fact does not change the outcome of this claim.

of cases;" and not "update[e] case notes" in a timely fashion. Reich Depo at 98:14-99:13. Thus, Defendants have met their burden under *McDonnell-Douglas* step two.

Brake must then "prove" that Defendants' "asserted justification" are pretextual, meaning they are "post hoc rationalizations invented for the purposes of litigation." *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572-78 (4th Cir. 2015). "An employee can demonstrate pretext by showing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's . . . reasons for its action.'" *Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp. 2d 668, 674 (W.D. Va. 2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)).

Brake received a positive performance review in 2024. Brake Depo at 71:15-72:6. He never received discipline even though Reich told Ferro that OEC was "beginning to initiate disciplinary action" against him. *Id.*; Dkt. 69-4 at 1; Reich Depo at 103:9-18. Although Reich terminated Brake for compliance issues, a reasonable jury could consider Brake's performance review—which is inconsistent with Defendants' assertions of poor performance—and find this "asserted justification" to be "pretext." *Jacobs*, 780 F.3d at 572-78.

While the Court relied on a mistaken fact in its opinion about the veteran status of Ingram and Woolfolk, manifest injustice has not occurred as a reasonable jury could still find for Brake on Count V without that fact. *Wooten*, 168 F. Supp. 3d at 893. Defendants' motion to reconsider as to Count V will be denied. Dkt. 84.

### B. VHRA Retaliation Claim

Under the VHRA, it is unlawful for "an employer to discriminate against any employee . . . because such individual has opposed ***any practice*** made an unlawful discriminatory practice by this chapter." Va. Code § 2.2-3905(B)(7)(i)-(iii) (emphasis added). The VHRA covers many types

6

of discrimination, including "discrimination . . . because of such individual's . . . sex" as well as "military status." *Id.* § B(1)(a). Raising allegations of sexual harassment, even of another, falls within the VHRA's scope of protected activity. *See e.g.*, *Sunkins v. Hamptons Roads Connector Partners*, 701 F. Supp. 3d 342, 358-60 (E.D. Va. 2023); *see also* Va. Code § 2.2-3902.

Defendants encourage the Court to reconsider its prior ruling on Brake's VHRA retaliation claim as it is "expressly predicated on the theory that he was retaliated against because of his May 30, 2024 complaint" that he was "mistreated based on veteran's status." Dkt. 85 at 5. However, Brake's amended complaint merely asserts he "filed a formal written complaint asserting he had been discriminated against by Reich" and that his "termination of employment was an act of retaliation and reprisal for his ***prior protected activity***." Dkt. 49 ¶¶ 224-26 (emphasis added). Brake does not specify which of his protected activities (as he had previously engaged in at least seven) motivated the retaliatory termination. *Id.* The Court will not read a limitation into Brake's complaint that does not exist.

The Court agrees with Defendants that summary judgment should be granted as to Brake's VHRA claim based on his May 15, 2024 report to OCR and May 30, 2024 report to Diane Padilla, as there is no evidence that Reich—who decided to terminate Brake—knew of either complaint. Therefore, no reasonable jury could find that these reports caused the adverse employment action. Reich Depo at 165:7-10; Dkt. 69-2 at 49 (Brake 20, PLTF_000262); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) ("In this Circuit, we have consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim."). Therefore, the Court will grant reconsideration as to these protected activities.

The Court will also grant reconsideration as to Brake's reports about Friesema's prejudgment of Title IX cases, including his letter to Dondi Costin; his conversations with Ashley

7

Reich on November 17, 2023 and April 22, 2024; and his participation in an HR investigation. Brake Depo at 99:22-100:20; 110:13-112:20; 112:21-113:14; 142:9-12, 145:18-146:3; 198:12-20. These reports, though protected activity under Title IX, fall outside the purview of the VHRA; a reasonable jury could not find them to be protected activity on a VHRA retaliation claim.[6]

However, this narrowing does not doom Count VI in its entirety. Brake engaged in two other protected activities by (1) assisting fellow Title IX investigator, Liz Ingram, with a complaint of sexual harassment against Nathan Friesema, Brake Depo at 230:8-19; 233:20-234:11; and (2) participating in the Gentry Locke investigation surrounding these allegations as a witness. *Id.* at 243:16-247:16.[7]

Because the VHRA protects employees from retaliatory actions after complaining of workplace sexual harassment,[8] and because Brake's complaints and participation in the investigation occurred within two months of his termination, *see Roberts*, 998 F.3d at 123 (causation may be established at summary judgment based on temporal proximity between the protected activity and the adverse action), a reasonable jury could find protected activity, adverse

---

[6]    The General Assembly limited the VHRA's scope to "violat[ions] [of] Virginia or federal statutes . . . governing discrimination." Va. Code § 2.2-3902. Title IX's scope is broader than the VHRA as it prescribes standards for how investigations of sex discrimination must proceed. *See* 34 C.F.R. § 106.45. Brake's three complaints about Friesema's prejudgment of Title IX cases, therefore, fall outside the scope of protected activity as defined by the VHRA. Dkt. 69-2 at 11-12 (Brake 6) ("[Friesema] had already investigated . . . and prejudged the case.")

[7]    This investigation was not an assigned Title IX investigation of Brake's; rather, he assisted a co-worker in a report of sexual harassment against their shared supervisor.

[8]    Before 2021, the VHRA did not provide for these causes of action. *See* Va. Code § 2.2-3905.1 (2020); *Crews v. Prince Charles Home Healthcare Agency, LLC*, 2021 WL 201281, at *5 (W.D. Va. Jan. 20, 2021) ("At the time [plaintiff] was employed . . . neither [sexual harassment or retaliation] were recognized as actionable under the VHRA."). However, the Virginia Values Act ("VVA"), which the General Assembly passed in 2020, expanded the VHRA to include them. *See* Va. Acts 2020 c. 1140 (adopted April 11, 2020).

action, and causation.[9] *Id.* at 230:8-19; 233:20-234:11 (Ingram email sent May 6. 2024); Dkt. 69-2 at 22-23. Therefore, Brake may proceed to trial on Count VI based on these two protected activities. Reconsideration will be granted in part, denied in part for Count VI.

**CONCLUSION**

The motion to reconsider will be granted in part and denied in part. Dkt. 84. A separate order will issue.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

Entered this 23rd of April, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] Although "a lapse of two months between the protected activity and adverse action is 'sufficiently long so as to weaken significantly the inference of causation," Defendants' adverse actions happened around a month and a half after Brake's May 6 report. *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (unpublished) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003)). And further, other record evidence, such as the mismatch between Brake's positive evaluation and Reich's alleged performance concerns support this inference. A reasonable jury could find causation as to this claim.